# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| ALT HOTEL, LLC, | ) | No. 11 B 19401 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ALT HOTEL, LLC, and HOTEL ALLERTON MEZZ, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 11 A 1469 |
| | ) | |
| DIAMONDROCK ALLERTON OWNER, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |
| | ) | |
| HOTEL ALLERTON MEZZ, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 A 1651 |
| | ) | |
| WELLS FARGO BANK, N.A., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | Judge Goldgar |

## <u>MEMORANDUM OPINION</u>

Two adversary proceedings in the Allerton Hotel bankruptcy case are before the court for ruling in different postures. One, *ALT Hotel LLC, et al. v. DiamondRock Allerton Owner, LLC*, No. 11 A 1469, is an action brought by the debtor and its parent against the debtor's senior secured creditor. Pending in the *ALT Hotel* adversary proceeding is the defendant's motion to dismiss all counts of the third amended complaint for failure to state a claim. The other, *Hotel*

*Allerton Mezz, LLC v. Wells Fargo Bank, N.A., et al.*, No. 11 A 1651, involves claims originally

brought in an Illinois state court foreclosure action, removed to this court, and consolidated into

a single amended complaint.  Pending in the *Hotel Allerton Mezz* adversary proceeding is the

court's suggestion that it lacks subject matter jurisdiction as well as the plaintiff's motion to

consolidate the adversary proceeding with the *ALT Hotel* adversary proceeding.

For the reasons that follow, the motion to dismiss the third amended complaint in the

*ALT Hotel* adversary proceeding will be granted in part and denied in part, and the *Hotel Mezz*

adversary proceeding will be remanded to the state court for lack of jurisdiction.  The motion to

consolidate the two adversary proceedings will be denied as moot.

## I. Background

### A. The *ALT Hotel* Adversary Proceeding

The following facts are drawn from the third amended complaint in the *ALT Hotel*

adversary proceeding, No. 1469, and are taken as true for purposes of the motion to dismiss

under Rule 12(b)(6).[1/]  *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir.

---

[1/]      The facts underlying the two adversary proceedings would be complex and
confusing under the best of circumstances, but the plaintiffs have managed to make them even
more so.  First, many of the entities involved here have names that are unimaginative variations
of each other: "ALT Hotel, LLC," "Alt Hotel Mezz, LLC," "Hotel Allerton Mezz, LLC,"
"DiamondRock Allerton Owner, LLC," and so on.  Second, the plaintiffs in both adversary
proceedings have compounded the nomenclature problem by referring unhelpfully to Alt Hotel
Mezz as "Mezz Borrower" and Hotel Allerton Mezz as "Mezz Lender."  Third, the facts in both
complaints have gaps, some large and some small, that raise many questions.  Fourth, the *ALT
Hotel* complaint begins with a long section that is badly written, alleges critical facts non-
chronologically, and as a consequence is close to incomprehensible.  (*See* Third Am. Compl. ¶¶
4-14).  Fifth, critical documents that underlie the parties' disputes are inexplicably not attached.
The third amended complaint in the *Alt Hotel* adversary proceeding fails to attach the mortgage
loan agreement on which it is based.  The amended complaint in the *Hotel Allerton Mezz*
adversary proceeding attaches an intercreditor agreement the breach of which is alleged but not a
related pledge and security agreement.  "Judges are not Sudoku masters . . . who enjoy filling in
a grid with few hints about where things go."  *In re Boone Cnty. Utils., LLC*, 506 F.3d 541, 542
(7th Cir. 2007).

2012).

In November 2006, an entity called Column Financial, Inc. made a $79 million loan, apparently to ALT Hotel, LLC ("the debtor"), secured by a mortgage on the well-known Allerton Hotel located at 701 N. Michigan Avenue in Chicago. (Third Am. Compl. ¶¶ 3, 19-20). That same year, at Column's direction, the debtor formed a bankruptcy remote "special purpose entity," Alt Hotel Mezz, LLC. (*Id.* ¶¶ 7, 11). Alt Hotel Mezz was intended to hold what is alleged to be "the membership interest" in the debtor (*id.*), and the parties assume that Alt Hotel Mezz did in fact acquire the "membership interest" somehow and so became the debtor's "parent" (*id.* ¶¶ 5, 7; DiamondRock Mem. at 3). Column had the debtor form Alt Hotel Mezz in order to securitize the mortgage loan. (Third Am. Compl. ¶¶ 7, 20).

In March 2007, Column proceeded with the securitization. (Third Am. Compl. ¶ 20). Column made a $10 million loan ("the mezzanine loan") to Alt Hotel Mezz that was used to reduce the balance of the mortgage loan to $69 million. (*Id.* ¶¶ 5, 8, 20). The mezzanine loan was secured by Alt Hotel Mezz's membership interest in the debtor. (*Id.* ¶ 5). Column assigned the mezzanine loan to an entity called Hotel Allerton Mezz, LLC. (*Id.*).[2]

The remaining $69 million mortgage loan was then split into two tranches. Tranche A, consisting of $40 million, was transferred to a securitization trust of which Key Bank, N.A., was the servicer. (Third Am. Compl. ¶ 20). Tranche B, the remaining $29 million, was sold to Wells Fargo Bank, N.A. (*Id.*). Wells Fargo was also special servicer of Tranches A and B. (*Id.* ¶ 21).

The mortgage loan was set to mature in November 2008. (Third Am. Compl. ¶ 21). The terms of the loan, however, permitted three one-year extensions of the maturity date provided the

---

[2]    The reasons for this transaction – and the origin of Hotel Allerton Mezz – are a mystery. The complaint nowhere alleges who created Hotel Allerton Mezz, why it was created, when it was created, or who owned it. Nor does the complaint allege why the loan was assigned to Hotel Allerton Mezz.

debtor met certain conditions.  (*Id.* at ¶¶ 21-22).  The debtor sought a first extension on

repayment, and Wells Fargo agreed.  (*Id.* ¶ *21*).  In 2009, the debtor sought a second extension.

(*Id.* ¶ 22).  After initially negotiating the matter with the debtor, Wells Fargo refused to go along

with a second extension.  (*Id.* ¶ 23).  Wells Fargo took the position that the debtor was not

entitled to a further extension because it had failed to maintain a "debt service coverage ratio"

("DSCR") required under the loan agreement, one of the conditions for any extension of the

maturity date.  (*Id.* ¶¶ 22-23, 30).  When the debtor failed to pay the loan on the maturity date

(*see id.* ¶ 29), Wells Fargo treated the failure as a default (*id.* ¶¶ 26, 29), and began negotiating

with the debtor about the possibility of a deed in lieu of foreclosure (*id.* ¶ 23).  Wells Fargo also

began assessing interest at a default rate.  (*Id.* ¶ 26).

In late December 2009, the debtor itself notified Wells Fargo that the mortgage loan was

in default (Third Am. Compl. ¶ 24) and agreed to a deed in lieu of foreclosure under which the

securitization trust or its assignee would take ownership of the hotel property (*id.* ¶¶ 25, 37).[3/]

That same month, the debtor also requested a "protective advance" of $400,000 from

Wells Fargo.  (Third Am. Compl. ¶¶ 24, 55).  The purpose of the advance is not alleged.  Wells

Fargo later asserted the request for a protective advance as another default.  (*See id.* ¶¶ 35, 55-

56).

On April 21, 2010, Wells Fargo formally declared a default in connection with the

mortgage loan.  (Third Am. Compl. ¶ 27).  Nine days later, Wells Fargo filed an action in the

Circuit Court of Cook County, Illinois to foreclose its mortgage on the hotel property.  (*Id.* ¶ 28).

---

[3/]        The complaint alleges that Chartres Lodging Group "and its affiliate Perry Real
Estate Capital Partners" agreed to the deed in lieu of foreclosure.  (*Id.* ¶ 25).  According to the
complaint, as of December 2009, Chartres "indirectly held the ownership interest in the Debtor
through [Alt Hotel Mezz]."  (*Id.* ¶ 24).  What this means and how Chartres came to have some
interest either in Alt Hotel Mezz or the debtor are not explained.

In its complaint, Wells Fargo alleged defaults based on the passage of the maturity date without full payment of the loan and on the request for a protective advance.  (*Id.* ¶¶ 29, 35, 55).

According to the debtor, the mortgage loan was not in material default.  Wells Fargo had miscalculated the DSCR – and had done so deliberately for the purpose of "manufacturing a non-monetary default"– by taking into account certain escrowed funds in determining net cash flow.  (Third Am. Compl. ¶¶ 30-31, 33-34).  As for the requested "protective advance," the debtor asserts that it, too, was "contrived by Wells Fargo," with the cooperation of Key Bank, Chartres, and Perry Capital, to give Wells Fargo an additional basis for asserting a default.  (*Id.* ¶ 38).  The debtor concedes that the protective advance was a default but asserts the default was not material because the advance was reimbursed from hotel cash flow.  (*Id.* ¶ 36).

In May 2010, the month after the mortgage foreclosure action was filed, Wells Fargo transferred the mortgage loan to DiamondRock Allerton Owner, LLC ("DiamondRock"), an entity owned in some unspecified way by DiamondRock Hospitality Co.  (Third Am. Compl. ¶¶ 13-14, 41).  DiamondRock acquired the loan at the discounted price of $61 million for the purpose of acquiring the hotel property.  (*Id.* ¶¶ 39-41, 45).  Wells Fargo used the $61 million from the sale to extinguish the Tranche A debt and to pay the Tranche B debt in part.  (*Id.* ¶ 42).  According to the debtor, Wells Fargo received additional consideration for the mortgage loan.  Specifically, DiamondRock Hospitality agreed to an increased interest rate on a $200 million unsecured loan from Wells Fargo to a DiamondRock Hospitality affiliate and also agreed to name Wells Fargo (or a related entity) as underwriter on a DiamondRock Hospitality stock offering.  (*Id.* ¶ 46).

One month later, in June 2010, Hotel Allerton Mezz foreclosed on the mezzanine loan to Alt Hotel Mezz and sold its membership interest in the debtor at a U.C.C. sale.  (Third Am. Compl. ¶¶ 5-6, 51(d)).  At the sale, Hotel Allerton Mezz was the successful bidder with a credit

bid of $8.4 million.  (*Id.* ¶¶ 5-6).  The sale left Hotel Allerton Mezz as (1) the owner and parent

of the debtor and (2) the holder of a $1.6 million unsecured deficiency claim against the owner's

former parent, Alt Hotel Mezz.  (*Id.* ¶¶ 4-6).

The debtor alleges, however, that Alt Hotel Mezz was its alter ego.  Alt Hotel Mezz, the

debtor asserts, was created solely to serve as the owner of the debtor and permit the

securitization of the mortgage loan.  (Third Am. Compl. ¶¶ 7, 10-12).  The debtor conducted no

business operations, had no employees, observed no corporate formalities, had no debt (other

than the mezzanine loan itself), and had no cash flow other than cash flow from the operation of

the hotel.  (*Id.* ¶ 10).  The debtor and Alt Hotel Mezz operated as "a single economic unit."  (*Id.*).

Because the debtor and Alt Hotel Mezz should be treated as one and the same, the debtor alleges,

the unsecured deficiency claim of Hotel Allerton Mezz against Alt Hotel Mezz is really a claim

against the debtor, making Hotel Allerton Mezz a creditor in the bankruptcy case.  (*Id.* ¶ 12).

The third amended complaint has five counts.  Of these, Hotel Allerton Mezz is a

plaintiff only on Count V; the debtor is the sole plaintiff on the rest.  Count I is a claim for

breach of the mortgage loan agreement pre-petition.  Count II is a claim for breach of an implied

duty of good faith and fair dealing.  Count III is a claim for unjust enrichment alleging that

DiamondRock was unjustly enriched when it paid only $61 million for the $69 million mortgage

loan.  Count IV is another claim for breach of the mortgage loan agreement, this time post-

petition.  On Counts I, II, and IV, the debtor requests damages as well as the disallowance of

DiamondRock's claim.  On Count III, the debtor requests only the disallowance of the claim.

Count V is a claim for equitable subordination asserting that DiamondRock's claims should be

subordinated to the allowed claims of Hotel Allerton Mezz and all other unsecured creditors.

DiamondRock has moved to dismiss all counts.  Counts I, IV, and V should be dismissed,

DiamondRock says, because the debtor admits it was in default on the mortgage loan.  Count II

should be dismissed because no breach of contract is alleged.  Count III should be dismissed

because the debtor has no claim for unjust enrichment arising out of the discounted sale to

DiamondRock.  Count IV should be dismissed for the additional reason that it improperly seeks

an affirmative recovery.  And Count V should be dismissed for the additional reason that the

equitable subordination claim fails to allege any harm to creditors, and the debtor's current

owner, Hotel Allerton Mezz, should be dismissed as a plaintiff in Count V because it is not a

creditor – unless the former owner, Alt Hotel Mezz, was the debtor's alter ego, and the alter ego

allegations are insufficient.

## B.  The *Hotel Allerton Mezz* Adversary Proceeding

In August 2011, Hotel Allerton Mezz removed to the bankruptcy court pursuant to 28

U.S.C. § 1452 a third party complaint and amended counterclaim it had filed in DiamondRock's

foreclosure action in the state court.  Hotel Allerton Mezz then filed an amended adversary

complaint in the bankruptcy court that consolidated its claims in a single pleading.  The

defendants are Wells Fargo, U.S. Bank National Association (as trustee), Wells Fargo (as special

servicer for U.S. Bank as trustee), DiamondRock, and DiamondRock Hospitality.

The following facts are drawn from the amended complaint in the *Hotel Allerton Mezz*

adversary proceeding and are also taken as true.  *Cf. Evers v. Astrue*, 536 F.3d 651, 656 (7th Cir.

2008) (noting that facts alleged are taken as true on a motion to dismiss under Rule 12(b)(1) for

lack of subject matter jurisdiction).  The facts overlap with the facts alleged in the *ALT Hotel*

third amended complaint, and the overlapping facts will be repeated only to the extent necessary.

In 2007, Column Financial as senior lender (i.e., lender on the mortgage loan) entered

into an intercreditor agreement (the "ICA") with itself as junior lender (i.e., lender on the

mezzanine loan).  (HAM Am. Compl. ¶ 19, Ex. A).  The purpose of the ICA was to determine

the relative rights of the mortgage and mezzanine lenders. (*Id.* Ex. A at 2). As the ownership of

the loans changed over time, the parties to the ICA changed as well, so that Hotel Allerton Mezz

replaced Column as junior lender, and Wells Fargo and others replaced Column as senior lender.

(*Id.* ¶ 19). The same was apparently true of a separate Pledge and Security Agreement (the

"PSA") under which the mezzanine loan was secured by the membership interest in the debtor.

(*Id.* ¶ 16).

The debtor defaulted on the mortgage loan (Hotel Allerton Mezz asserts there was a

default but acknowledges the question is in dispute), Alt Hotel Mezz defaulted on the mezzanine

loan, and both defaults constituted defaults under the mezzanine loan agreement and the PSA.

(HAM Am. Compl. ¶ 21). In April 2010, Hotel Allerton Mezz accordingly issued a notice of

default to Alt Hotel Mezz and demanded payment. (*Id.* ¶ 22). No payment was forthcoming.

(*Id.* ¶ 23).

Under the PSA, Hotel Allerton Mezz had the right in the event of a default on the

mezzanine loan (a) to receive any income, distributions, proceeds, or other property resulting

from its collateral (namely the membership interest in the debtor), (b) to have the collateral

registered in its name, (c) to treat the collateral as if it were the owner, and (d) to "collect,

receive, appropriate and realize upon the collateral." (HAM Am. Compl. ¶¶ 25-27). The ICA

also gave Hotel Allerton Mezz certain rights in the event of a default under the mortgage loan.

(*Id.* ¶ 28). Specifically, if the mortgage loan had been accelerated or a foreclosure action

commenced, Hotel Allerton Mezz could buy the mortgage loan at a discount. (*Id.*).

In May 2010, Hotel Allerton Mezz notified Alt Hotel Mezz and Wells Fargo as servicer

that it had exercised its rights under the PSA to replace Alt Hotel Mezz as signatory in

connection with the membership interest in the debtor. (HAM Am. Compl. ¶ 32). Hotel

Allerton Mezz also notified these parties that it intended to conduct a public auction of the

membership interest.  (*Id.* ¶ 33).  Hotel Allerton Mezz hired a broker to market the membership

interest to bidders in the hotel industry.  (*Id.* ¶ 34).  The broker, in turn, hired an auctioneer,

prepared an information book for prospective investors, advertised the sale, and contacted

numerous bidders.  (*Id.* ¶ 34).  Forty potential buyers signed confidentiality agreements, and the

broker advised Hotel Allerton Mezz that the expected sale price was at or near the $10 million

mezzanine loan amount.  (*Id.* ¶ 35).

     The expected auction never took place.  Just days after notice of the auction was given,

DiamondRock Hospitality announced that it had agreed to acquire the mortgage loan at a

discount and expected to own the hotel once the foreclosure action had been completed.  (HAM

Am. Compl. ¶ 36).  DiamondRock Hospitality's repeated mention of the discount was intended

to create the false impression that the hotel was worth far less than the combined loan balance

and so to discourage participation in Hotel Allerton Mezz's auction sale.  (*Id.* ¶ 37).

DiamondRock also sent a letter to Hotel Allerton Mezz asserting that the proposed sale would

violate the ICA.  (*Id.* ¶ 39).  The effort was successful:  interest in the auction waned, and the

sale was cancelled.  (*Id.* ¶ 38).

     After the cancellation of the sale, Hotel Allerton Mezz and its broker took steps to "re-

educate" prospective buyers, and interest in the sale resumed.  (HAM Am. Compl. ¶¶ 47-48).

Negotiations ensued with a buyer interested in acquiring not only the mezzanine loan but also

(through an exercise of Hotel Allerton Mezz's rights under the ICA) the mortgage loan.  (*Id.* ¶

48).  Hotel Allerton Mezz also exercised its right under the PSA to have the membership interest

in the debtor registered in its name.  (*Id.* ¶ 49).  Aware that interest in the sale had resumed,

DiamondRock Hospitality and DiamondRock then asserted in a letter that Hotel Allerton Mezz's

exercise of its rights under the PSA was a breach of the ICA.  (*Id.* ¶ 50).

     According to Hotel Allerton Mezz, Wells Fargo's sale of the mortgage loan to

DiamondRock was "not the result of arms-length negotiations but rather the product of an illicit commercial trade off" because the sale was not an auction sale. (HAM Am. Compl. ¶ 41). Instead, as the plaintiffs in the *ALT Hotel* adversary proceeding also allege, there was separate and additional consideration: a loan between Wells Fargo and DiamondRock Hospitality was renegotiated and the interest rate increased, and Wells Fargo was named underwriter for a DiamondRock Hospitality public offering. (*Id.*).

By declaring a breach of the ICA (in writing no less), DiamondRock deliberately "raised a cloud" over the contractual rights of Hotel Allerton Mezz under the ICA and PSA, frustrating and interfering with its exercise of those rights, all to ensure that DiamondRock could acquire the hotel. (HAM Am. Compl. ¶¶ 5, 31, 40, 54, 56, 63). Moreover, Wells Fargo and U.S. Bank acted in concert with DiamondRock and DiamondRock Hospitality to interfere with Hotel Allerton Mezz's rights, breaching both the ICA and PSA and damaging Hotel Allerton Mezz. (Id. ¶¶ 2, 4-5, 31, 40, 44, 56, 63-64).

The amended complaint has six counts, all claims for damages under state law. Counts I and II are claims against Wells Fargo, Wells Fargo as servicer, and U.S. Bank for breach of different sections of the ICA. Count III is a claim against Wells Fargo, Wells Fargo as servicer, DiamondRock, and DiamondRock Hospitality for intentional interference with the ICA. Count IV is a claim against all defendants for intentional interference with prospective economic advantage. Count V is a claim against DiamondRock for breach of the ICA. And Count VI is a claim against DiamondRock for what Hotel Allerton Mezz calls intentional interference "with business relationship."

After the defendants answered the amended complaint, Hotel Allerton Mezz moved to consolidate the *ALT Hotel* adversary proceeding with the *Hotel Allerton Mezz* adversary proceeding. When the motion was presented, the court raised as one of several possible

objections to consolidation that the court lacked subject matter jurisdiction to hear the *Hotel Allerton Mezz* adversary proceeding, and the matter was set for briefing on the jurisdictional question.  Hotel Allerton Mezz and the debtor submitted a joint memorandum (although the debtor is not a party to the *Hotel Allerton Mezz* adversary and so had no right to file anything) supporting jurisdiction.  The defendants were less helpful.  Wells Fargo filed a response in which it took no position on the jurisdictional question.  U.S. Bank adopted Wells Fargo's non-response.  DiamondRock and DiamondRock Hospitality filed nothing at all.[4]

*    *    *    *

Both the motion of DiamondRock to dismiss the third amended complaint in the *ALT Hotel* adversary proceeding and the question of subject matter jurisdiction over the *Hotel Allerton Mezz* adversary proceeding are briefed and ready for ruling.

## II.  Discussion

DiamondRock's motion to dismiss the third amended complaint in the *ALT Hotel* adversary proceeding will be granted in part and denied in part.  All but one of the counts will be dismissed, one with prejudice and two with leave to amend, one count will be stricken, and Hotel Allerton Mezz will be dismissed as a party plaintiff.  As for the *Hotel Allerton Mezz* adversary proceeding, the court lacks subject matter jurisdiction.  The adversary proceeding will be remanded to the state court, and the motion to consolidate the *Hotel Allerton Mezz* adversary proceeding with the *ALT Hotel* adversary proceeding will be denied as moot.

---

[4]    Declining to help the court with a jurisdictional question, especially when the court raised the question and asked for help, was an unfortunate choice.  "As officers of the court, lawyers who practice in federal court have an obligation to assist the judges to keep within the boundaries fixed by the Constitution and Congress; it is precisely to impose a duty of assistance on the bar that lawyers are called 'officers of the court.'" *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 551 (7th Cir. 2002).

## A. The *ALT Hotel* Motion to Dismiss

Taking the motion to dismiss in *ALT Hotel* first, the motion will be granted in large part.
The motion will be denied as to the breach of contract claim in Count I but will be granted as to
the claim in Count II for breach of the implied covenant of good faith and the claim in Count III
for unjust enrichment.  Count IV will be stricken as redundant of the claim in Count I.  Hotel
Allerton Mezz will be dismissed as a party plaintiff on Count V, the equitable subordination
claim, and the remaining claim of the debtor in that count will be dismissed.  The dismissal of
Count II will be with prejudice; Counts III and V will be dismissed with leave to amend.

### 1.  Rule 12(b)(6) Standards

Under Rule 12(b)(6), a complaint will be dismissed unless it clears two hurdles.  *EEOC
v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  First, the complaint must
contain enough factual detail to give the defendant fair notice of the claim under Rule 8(a).  "[A]
formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 555 (2007).  Some facts must support each element of the claim.
*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *McCauley v. City of Chicago*, 671 F.3d 611,
616-17 (7th Cir. 2011); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010).

Second, a complaint must state a plausible claim – meaning the allegations must raise the
plaintiff's right to relief above a "speculative level."  *Twombly*, 550 U.S. at 555.  The plausibility
standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility
that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678  (internal quotation omitted).  To
establish plausibility, a plaintiff "must give enough details about the subject-matter of the case to
present a story that holds together."  *Swanson*, 614 F.3d at 404.  That the allegations underlying
the claim "'could be true is no longer enough to save it.'"  *Estate of Miller ex rel. Bertram v.*

*Tobiasz*, 680 F.3d 984, 989 (7th Cir. 24, 2012) (quoting *Atkins v. City of Chicago*, 631 F.3d 823,

831 (7th Cir. 2011)).

## 2.  Count I: Pre-Petition Breach of Contract

DiamondRock's motion to dismiss Count I of the third amended complaint will be

denied.  Count I states a claim for breach of contract under New York law.[5/]

The elements of a breach of contract claim under New York law are not exotic.  The

plaintiff must allege the existence of a contract; the plaintiff's performance under the contract,

the defendant's breach of the contract; and damages resulting from the breach.  *Fischer &*

*Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011); *Russo v. Estee Lauder Corp.*,

___ F. Supp. 2d ___, ___, 2012 WL 694842, at *19 (E.D.N.Y. 2012); *Elisa Dreier Reporting*

*Corp. v. Global NAPs Networks, Inc.*, 84 A.D.3d 122, 127, 921 N.Y.S.2d 329, 333 (2011);

*Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 426, 913 N.Y.S.2d 161, 162 (2010).

The debtor adequately alleges each of these elements.  According to the third amended

complaint, the debtor was a party to the mortgage loan agreement with Wells Fargo.  (Third Am.

Compl. ¶¶ 19-20, 53).  In the fall of 2009, the debtor was performing its obligations under the

mortgage loan agreement.  (*Id.* ¶¶ 55, 61).  Wells Fargo breached the agreement in late 2009

when it refused to extend the maturity date for an additional year on the ground that the debtor

---

[5/]    Because the parties simply assumed that New York law applied to the breach of contract claim in Count I (as well as to most of the other state law claims here), the court sought and received supplemental briefing on the choice of law question.  In their supplemental briefs, the parties agreed that New York law applied, each submitting what purported to be a choice of law provision from the mortgage loan agreement.  Unfortunately, as noted earlier, the mortgage loan agreement is not attached to the third amended complaint.  It is enough, though, that the parties agree.  *See Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, ___ F.3d ___, ___, 2012 WL 3517577, at *5 n.1 (7th Cir. Aug. 15, 2012) (stating that "[w]e do not worry about conflict of laws unless the parties disagree on which state's law applies" (internal quotation omitted)); *Allan Block Corp. v. County Materials Corp.*, 512 F.3d 912, 915 (7th Cir. 2008) (noting that "parties are free to choose (within reason) whatever body of law they want to govern a litigation").

had failed to meet the DSCR requirement of the agreement although the requirement had in fact

been met.  (*Id.* ¶¶ 22-23, 30-31, 33-34, 54).  The debtor was damaged as a consequence because

Wells Fargo declared a default, commenced a mortgage foreclosure action that it is still

pursuing, and improperly charged the debtor for default interest, late fees, legal fees, and other

fees and expenses.  (*Id.* ¶¶ 27-28, 57).  These allegations allege a breach of contract claim.[6]

     In requesting dismissal, though, DiamondRock does not deny that these allegations

standing alone make out a breach of contract claim.  Rather, DiamondRock points out that the

debtor admits to a later breach of its own, one that would have would have allowed

DiamondRock to declare a default and pursue its remedies anyway.  *See Point Prods. A.G. v.*

*Sony Music Entm't, Inc.*, 215 F. Supp. 2d 336, 341 (S.D.N.Y. 2002) (stating that a plaintiff

cannot recover for breach of contract "if it would have suffered the harm regardless of the

defendant's actions"). Shortly after Wells Fargo refused to extend the maturity date, the debtor

sought and received a "protective advance," something the debtor concedes was a breach of the

mortgage loan agreement.  (Third Am. Compl. ¶ 24; *see also id.* ¶¶ 35, 55).  The debtor counters

that the breach was not material because Wells Fargo reimbursed itself from the hotel's cash

flow (*id.* ¶¶ 36, 55), but DiamondRock contends that materiality is irrelevant.  A breach is a

breach, DiamondRock says, and Wells Fargo was entitled to declare a default and begin

foreclosure proceedings.

     DiamondRock is mistaken.  Certainly, a breach need not always be material for the

injured party to sue for breach of contract.  A party to a contract injured by its breach can recover

---

[6]    Count I states a claim against DiamondRock although Wells Fargo committed the
alleged breach because, the debtor alleges, when Wells Fargo assigned the loan to
DiamondRock, DiamondRock took the assignment subject to all claims the debtor might have
against Wells Fargo.  (*See* Third Am. Compl. ¶ 59).  For purposes of the current motion, the
allegation is assumed to be true.

damages even for a non-material (or partial) breach. *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 117-18 (2d Cir. 2006). For the injured party to cease performance and declare the contract at an end, however, the breach must be material. *Id.* at 117; *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997); *Bernard Nat'l Loan Investors, Ltd. v. Traditions Mgmt., LLC*, 688 F. Supp. 2d 347, 361 (S.D.N.Y. 2010); *Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F. Supp. 2d 283, 295 (S.D.N.Y. 2005) (noting that "only *material* breaches of contract may excuse performance by the non-breaching party" (emphasis in original)).

In declaring a default and foreclosing on the hotel that served at its collateral, Wells Fargo was declaring its agreement with the debtor at an end and declining further performance. To excuse Wells Fargo's continued performance, the debtor's breach had to be material. The debtor acknowledges the breach but alleges that it was not material and supplies facts to support the allegation. Those facts are taken as true at the pleading stage, *Appert*, 673 F.3d at 622, and DiamondRock argues only that the entire question is beside the point, not that the debtor's facts are insufficient – that even if true, in other words, the breach would still be material. Since the materiality question is not beside the point, at least as Count I is currently pled, the debtor's allegations about the protective advance do not defeat its breach of contract claim in Count I.[7]

Because Count I states a claim for breach of the mortgage loan agreement, the motion to

---

[7]      In insisting that materiality is beside the point, DiamondRock may be taking the position that parties are free to define for themselves what constitutes a material breach. True. *See United Air Lines, Inc. v. Austin Travel Corp.*, 867 F.2d 737, 741 (2d Cir. 1989) ("[F]or a non-material breach to allow an aggrieved party to abrogate the contract, it must be explicitly stated in the agreement of the parties.") (citing New York law). But whether the parties here did so is unclear. Again, the mortgage loan agreement is not attached to the third amended complaint. As a result, it is unclear what a "protective advance" is, why requesting one might have breached the agreement, or even (apart from the debtor's admission) that it was a breach.

dismiss that count will be denied.[8]

### 3. Count II: Breach of Implied Covenant of Good Faith

The motion to dismiss Count II of the third amended complaint, on the other hand, will

be granted.  Count II fails to state a claim for breach of the implied covenant of good faith and

fair dealing separate from the breach of contract claim in Count I.

Under New York law, a duty of good faith and fair dealing is implied in every contract.

*National Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004); *Dalton v.*

*Educational Testing Serv.*, 87 N.Y.2d 384, 389, 663 N.E.2d 289, 291 (1995).  The purpose of the

implied duty is to further the contract by protecting a promisee against "breach of the reasonable

expectations and inferences otherwise derived from the agreement."  *Ari & Co. v. Regent Int'l*

*Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003) (internal quotation omitted); *see also Dalton*,

87 N.Y.2d at 389, 663 N.E.2d at 291.  The duty obligates each party not to "do anything which

will have the effect of destroying or injuring the right of the other party to receive the fruits of

the contract."  *Dalton*, 87 N.Y.2d at 389, 663 N.E.2d at 291 (internal quotation omitted); *see also*

*Wieder v. Skala*, 80 N.Y.2d 628, 637, 609 N.E.2d 105, 109 (1992) ("The idea is simply that

when A and B agree that B will do something it is understood that A will not prevent B from

doing it.").

Breach of the duty, however, is simply a breach of the underlying contract.  *National*

*Mkt.  Share*, 392 F.3d at 525; *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d

1052, 1056 (2d Cir. 1992).  A plaintiff therefore cannot state a claim for breach of the implied

---

[8]      DiamondRock also argues that some of the debtor's allegations are implausible in
the *Twombly* sense – specifically, the allegations that the debtor's then-owners conspired with
Wells Fargo and others to have the debtor request the protective advance so that Wells Fargo
would have another basis for claiming a default.  (Third Am. Compl. ¶¶ 38, 56).  Whether these
allegations are implausible is irrelevant.  Even without them, Count I states a claim.

duty of good faith and fair dealing "when a breach of contract claim, based upon the same facts,

is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002);

*Kosher Provisions, Inc. v. Blue & White Food Prods. Corp.*, No. CV-04-361 (NGG)(SAC), 2005

WL 1890039, at *3 (E.D.N.Y. Aug. 9, 2005) ("New York law does not recognize a separate

cause of action for breach of the implied covenant of good faith and a breach of contract on the

same facts." (internal quotation omitted)); *Ari & Co.*, 273 F. Supp. 2d at 522.  Nor is there a

claim when the relief sought for breach of the duty "is intrinsically tied to the damages allegedly

resulting from the breach of contract."  *Ari & Co.*, 273 F. Supp. 2d at 522 (internal quotation

omitted); *see also TADCO Constr. Corp. v. Dormitory Auth. of N.Y.*, 93 A.D.3d 619, 620, 941

N.Y.S.2d 102, 104 (2012); *Superior Officers Council Health & Welfare Fund v. Empire*

*HealthChoice Assurance, Inc.*, 85 A.D.3d 680, 682, 927 N.Y.S.2d 324, 327 (2011).

Count II fails to state a claim – not, as DiamondRock argues, because no breach of the

mortgage loan agreement is alleged in Count I (one is alleged), but because the implied duty

claim is predicated on the same breach.  According to Count II, DiamondRock's breach of the

implied duty of good faith consisted of (1) refusing to grant an extension of the maturity date

although the DSCR requirement had been satisfied; (2) demanding and then paying itself out of

the hotel's cash flow default interest, late fees, legal fees, and other fees and expenses; and (c)

filing and prosecuting the foreclosure action in the absence of a default.  (Third Am. Compl. ¶¶

67-68).[9/]  The first is the same breach of contract alleged in Count I and so cannot supply the

---

[9/]        Some of these acts were committed by Wells Fargo, some by DiamondRock, and
some by both.  (*See* Third Am Compl. ¶¶ 67-68).  As in Count I, the debtor alleges that when
Wells Fargo assigned the loan to DiamondRock, DiamondRock took the assignment subject to
all claims the debtor might have against Wells Fargo, making DiamondRock responsible for
Wells Fargo's breaches.  (*See* Third Am. Compl. ¶ 69).  Again, the allegation is assumed to be
true for purposes of the motion to dismiss, so it is unnecessary to detail exactly who did what to
whom.

basis of a claim for breach of the implied duty. *Harris*, 310 F.3d at 81. The others are acts that

flow directly from the contract breach – had there been no wrongful default declared, there

would have been no claim for default interest and so on, nor would there have been a foreclosure

action – so that the breach of implied duty claim is "intrinsically tied to the damages allegedly

resulting from the breach of contract." *Ari & Co.*, 273 F. Supp. 2d at 522 (internal quotation

omitted); *see also Geler v. National Westminster Bank USA*, 770 F. Supp. 210, 215 (S.D.N.Y.

1991) (dismissing claim where the allegations "presuppose[d] that the Bank breached the express

terms of the contract").

Count II, then, adds nothing to Count I but is redundant. New York courts, state and

federal, consistently dismiss claims for breach of the implied duty of good faith and fair dealing

when those claims are redundant of breach of contract claims. *See L-7 Designs, Inc. v. Old

Navy, LLC*, 647 F.3d 419, 434 n.17 (2d Cir. 2011); *Harris*, 310 F.3d at 81; *Schlather, Stumbar,

Parks & Salk, LLP v. One Beacon Ins. Co.*, No. 5:10-cv-0167 (NPM/DEP), 2011 WL 222235, at

*4 (N.D.N.Y. Jan. 21, 2011); *Kosher Provisions*, 2005 WL 1890039, at *3-4; *Ari & Co.*, 273 F.

Supp. 2d at 522 (making this observation); *TADCO*, 93 A.D.2d at 620, 941 N.Y.S.2d at 104;

*Bostany v. Trump Org. LLC*, 73 A.D.3d 479, 481, 901 N.Y.S.2d 207, 208 (2010); *Levi v. Utica

First Ins. Co.*, 12 A.D.3d 256, 257-58, 786 N.Y.S.2d 3, 5 (2004); *see also* Glen Banks, *New York

Contract Law* § 11:16 (2006).

Because Count II is redundant of Count I, Count II fails to state a claim for breach of the

implied duty of good faith and fair dealing. Count II will be dismissed with prejudice.[10/]

---

[10/]    Technically, Count II should be stricken, not dismissed. As discussed below in
connection with Count IV, redundant claims are stricken under Rule 12(f). *See* Fed. R. Civ. P.
12(f) (made applicable by Fed. R. Bankr. P. 7012(b)). But since the federal decisions from New
York refer to dismissal, and since the result is the same, the claim in Count II will be dismissed.

### 4. Count III: Unjust Enrichment

Count III, the claim for unjust enrichment, will also be dismissed.  Count III fails to state a claim for unjust enrichment because the debtor has not alleged that DiamondRock has been unjustly enriched at the debtor's expense.

An unjust enrichment claim is an equitable claim, quasi-contractual in nature, and exists to prevent injustice.  *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142, 907 N.E.2d 268, 274 (2009); *see also Goldman v. Metropolitan Life Ins. Co.*, 5 N.Y.3d 561, 572, 841 N.E.2d 742, 746 (2005).  The claim rests on the principle that "a person shall not be allowed to enrich himself unjustly at the expense of another."  *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516, ___ N.E.2d ___, ___ (2012); *IDT Corp.*, 12 N.Y.3d at 142, 907 N.E.2d at 274.  To state a claim for unjust enrichment, a complaint must allege three elements: (1) the defendant was enriched; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution.  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182, 944 N.E.2d 1104, 1101 (2011).

Count III states no claim because the debtor has not alleged the second element.  The crux of Count III is that DiamondRock acquired the mortgage loan from Wells Fargo at an $8 million discount, paying $61 million for a loan with a face amount of $69 million.  (Third Am. Compl. ¶ 74).  Because of the discount, the debtor alleges, DiamondRock has "greater leverage over the Debtor" in any litigation about the hotel.  (*Id.* ¶ 75).  The debtor adds that the discount gave the false impression that the hotel was worth less than the principal amounts of the mortgage loan and the mezzanine loan combined.  (*Id.*).  DiamondRock, the debtor concludes, "should not be permitted to retain the unfair advantage it gained" (*id.* ¶ 76), and the debtor asks

that DiamondRock's claim be reduced by $8 million. But the $8 million was not something the debtor gave up. If anything, Wells Fargo gave it up, since Wells Fargo was the one to whom the loan was owed and who granted the discount. And the debtor seems to realize as much, since the relief sought in Count III is not restitution of the $8 million, $8 million to which the debtor has no right, but rather a reduction of DiamondRock's claim.

The debtor's failure to allege that it transferred something of value to DiamondRock is fatal to Count III. The "essence of a claim for unjust enrichment" is that "one party has parted with money or a benefit that has been received by another at the expense of the first party." *Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004). Unless the plaintiff transferred something of value to the defendant, something to be restored, there is no claim. *Id.*; *see also IDT Corp.*, 12 N.Y.3d at 142, 907 N.E.2d at 274 (affirming dismissal of a claim that the payment of certain fees unjustly enriched the defendant where the plaintiff "did not pay the alleged fees"); *ABN Amro Bank, N.V. v. MBIA Inc.*, 81 A.D.3d 237, 246-47, 916 N.Y.S.2d 12, 18 (2011) (affirming dismissal of a claim alleging that the defendant corporations were unjustly enriched with funds received from their parent, not from the plaintiffs), *aff'd*, 17 N.Y.3d 208, 952 N.E.2d 463 (2011); *Strong v. Strong*, 277 A.D.2d 533, 534, 715 N.Y.S.2d 499, 501 (2000) (affirming dismissal of a claim where the plaintiff had no right to the payment that was alleged to have unjustly enriched the defendant).

Because Count III alleges no enrichment of DiamondRock at the debtor's expense and so no basis for restitution, the debtor has failed to state a claim for unjust enrichment.[11/] Count III

---

[11/]    Another way to look at the deficiency in Count III is that the debtor has not alleged it had any relationship with DiamondRock giving rise to the $8 million discount, the sum by which DiamondRock was supposedly unjustly enriched. Although New York does not require privity to state an unjust enrichment claim, there must at least be a relationship or connection between the parties – and one that is not "too attenuated." *Georgia Malone & Co.*, 19 N.Y.3d at 516, ___ N.E.2d at ___ (quoting *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215-16,

will be dismissed with leave to amend.

### 5. Count IV: Post-Petition Breach of Contract

Count IV of the third amended complaint must go as well.  But rather than dismiss Count IV, the claim in that count will be stricken as duplicative of the claim in Count I.

In Count IV, the debtor alleges that after the bankruptcy petition was filed, DiamondRock paid itself additional default interest of at least $1.1 million from hotel cash flow. (Third Am. Compl. ¶ 79).  Because the debtor was entitled to an extension of the maturity date and was not in default, DiamondRock had no right to pay itself default interest, and the debtor was damaged as a result.  (*Id.* ¶¶ 79-80).  As relief, the debtor requests two alternative remedies: either (1) a damage award against DiamondRock in the amount of $1.1 million (plus any additional default interest accrued and paid), or (2) a reduction in DiamondRock's claim by that amount.  (*Id.* at  21).

The problem with Count IV is that the claim simply duplicates the claim in Count I, making the same allegations and requesting the same relief.  In Count I, the debtor alleges that there was a breach of the mortgage loan agreement when the debtor was refused an extension of the maturity date, an extension to which the debtor was entitled.  (*Id.* ¶ 54).  Because there was no default, the debtor was damaged in the amount of default interest accrued and paid.  (*Id.* ¶ 57).  The debtor is therefore "entitled to recover affirmatively from DiamondRock all default interest . . . . Diamond[Rock] paid itself from the Hotel's revenues."  (*Id.* ¶ 61).  As relief in

---

863 N.E.2d 1012, 1018 (2007)); *see also Mandarin Trading*, 16 N.Y.3d at 182-83, 944 N.E.2d at 1104-11.  The relationship that gave rise to the discount was one between DiamondRock and Wells Fargo.  The debtor was a complete stranger to DiamondRock until the transaction that produced the discount was completed.  One party cannot seek unjust enrichment from another when the parties "simply had no dealings with each other."  *Georgia Malone & Co.*, 19 N.Y.3d at 517-18, ___ N.E.2d at ___.

Count I, the debtor requests a damage award against DiamondRock and disallowance of

DiamondRock's claim "in an amount equal to all unpaid interest . . . from and after January 1,

2010." (*Id.* at 15).

Under Rule 12(f), a court can strike from a pleading "any redundant . . . matter" and can

do so "on its own," without a request from a party. Fed. R. Civ. P. 12(f) (made applicable by

Fed. R. Civ. P. 7012(b)). Matter is redundant if it constitutes "a needless repetition of other

averments in the pleading." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice &*

*Procedure* § 1382 at 456 (3d ed. 2004). Although the use of Rule 12(f) to strike offending

matter is disfavored because it can serve as a tool for delay, the rule is properly invoked to

"remove unnecessary clutter from the case." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d

1286, 1294 (7th Cir. 1989); *see also Reis Robotics USA, Inc. v. Concept Indus., Inc.*, 462 F.

Supp. 2d 897, 904 (N.D. Ill. 2006). Whether to strike matter rests with the discretion of the trial

court. *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir.

2009).

Count IV needlessly repeats the allegations of Count I. Count IV alleges the same breach

of contract, complains of the same payment of default interest, and seeks the same relief, either a

damage award against DiamondRock or recoupment in the form of a reduction in the amount of

DiamondRock's claim. Nor does the debtor's designation of Count IV as addressing a "post-

petition" breach differentiate Count IV from Count I. Count I is not limited to pre-petition

events but alleges damage from the payment of default interest "from and after December 2009"

(Third Am. Compl. ¶ 57) and seeks to recover "all default interest" as well as other charges (*id.* ¶

61). With Count I in the complaint, Count VI serves no purpose. *See Rackson v. Sosin*, No. 95

Civ. 1105(LAP), 1997 WL 786940, at *6 (S.D.N.Y. Dec. 22, 1997) (striking contract claim as

redundant of contract claim in another count); *Garvey v. National Grange Mut. Ins. Co.*, No.

CIV. A. 95-0019, 1995 WL 115416, at *2-3 (E.D. Pa. Mar. 16, 1995) (same).

Because Count IV is redundant of Count I, Count IV will be stricken under Rule 12(f). DiamondRock's arguments for the dismissal of Count IV need not be addressed.

### 6. Count V: Equitable Subordination

Count V, finally, will be dismissed.  Hotel Allerton Mezz will be dismissed as a plaintiff in Count V because it is neither the debtor nor a creditor of the debtor and so has no standing to sue.  And although the debtor has standing,[12] the allegations in Count V do not state a claim.

Count V is an equitable subordination claim and the only claim on which both Hotel Allerton Mezz and the debtor are plaintiffs.  The plaintiffs allege that DiamondRock engaged in inequitable conduct requiring the subordination of its claim, in that DiamondRock (a) wrongfully declared a default on the mortgage loan, causing default interest to accrue (Third Am. Compl. ¶ 47); (b) used its "undue control" over the debtor's cash management system to pay itself more than $3.1 million in default interest (*id.* ¶ 48); (c) purchased the mortgage loan at a discount, undermining Hotel Allerton Mezz's ability to market the mezzanine loan (*id.* ¶ 49); and  (d) colluded with Wells Fargo and others to prosecute an unlawful mortgage foreclosure action in order to seize ownership of the hotel (*id.* ¶ 50).  This conduct allegedly injured Hotel Allerton Mezz as well as "other creditors."  (*Id.* ¶¶ 47-50).  DiamondRock also allegedly injured Hotel Allerton Mezz by interfering with its rights under the ICA in various ways.  (*Id.* ¶ 51).

---

[12]     Courts have differed on a debtor's standing to prosecute an equitable subordination claim.  *Compare, e.g., In re County of Orange*, 219 B.R. 543, 557 (Bankr. C.D. Cal. 1997) (concluding that a debtor has no standing), *with Official Comm. of Unsecured Creditors v. Liberty Sav. Bank, FSB (In re Toy King Distribs., Inc.)*, 256 B.R. 1, 194 (Bankr. M.D. Fla. 2000) (stating that a debtor has standing).  Under section 1107(a), 11 U.S.C. § 1107(a), a debtor in possession in a chapter 11 case has the powers of a trustee and therefore has standing.  1 Robert E. Ginsberg & Robert D. Martin, *Ginsberg & Martin on Bankruptcy* § 10.11[C] at 10-121 (Susan V. Kelley, ed., 2011-2 Supp.).

Hotel Allerton Mezz bases its standing on the alter ego allegations described earlier.  The

plaintiffs allege that the debtor and its former owner, Alt Hotel Mezz, were effectively a single

entity (Third Am. Compl. ¶¶ 7, 10-11), and that it would be "unfair" and would "work an

injustice" on Hotel Allerton Mezz to observe their separate corporate identities (*id.* ¶ 12).

Because the debtor and Alt Hotel Mezz should be deemed a single entity, so the argument goes,

the unsecured deficiency claim Hotel Allerton Mezz holds against Alt Hotel Mezz as a result of

the foreclosure on the mezzanine loan is a prepetition claim against the debtor itself.  (*Id.* ¶ 12).

The claim makes Hotel Allerton Mezz a creditor of the debtor and therefore confers standing to

sue for equitable subordination.

### a.  The Piercing Claim

Hotel Allerton Mezz must be dismissed as a party plaintiff.  The alter ego allegations on

which it bases its standing are a variation on a controversial form of corporate veil piercing.

Delaware (whose law the parties agree governs here) has never recognized this form of piercing,

and in the absence of clear guidance from the Delaware courts or a clear trend in other states, a

federal court has no business venturing beyond the current borders of Delaware corporate law.

In Delaware, as in other states, it is an "established principle" that a corporation has an

identity separate from the identities of its shareholders.  *Schoon v. Smith*, 953 A.2d 196, 204 n.22

(Del. 2008); *see also Bird v. Wilmington Soc'y of Fine Arts*, 43 A.2d 476, 483 (Del. 1945)

(noting that "[f]ew principles of corporation law are clearer").  That separate identity will be

disregarded, however, and the "corporate veil" will be "pierce[d]," when the shareholders

dominate the corporation to the point that the corporation has no independent legal existence.

*Wallace ex rel. Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d 1175, 1184 (Del Ch.

1999).  For the veil to be pierced, the corporate structure must also "cause fraud or similar

injustice." *Id.* (internal quotation omitted). "Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *Id.*

Traditionally, courts employ the doctrine of piercing the corporate veil to hold shareholders, who would otherwise have no liability for corporate debts, liable for those debts. *See* Stephen B. Presser, *Piercing the Corporate Veil* § 1:1 at 8-9 (2011); 1 Philip I. Blumberg, et al., *Blumberg on Corporate Groups* § 10.02 at 10-5 to -6 (2007 Supp.); 1 William Meade Fletcher, *Cyclopedia of Corporations* § 41 at 111 (2006 rev.). Some jurisdictions also recognize a form of "piercing the veil in 'reverse.'" Fletcher, *supra*, § 41.70 at 255. In the typical reverse piercing case, a corporation will be held liable for the debts of a corporate insider, a shareholder or a subsidiary. *Id.*; *see also* Blumberg, *supra*, § 14.07[A] at 14-21; Gregory S. Crespi, *The Reverse Pierce Doctrine: Applying Appropriate Standards*, 16 J. Corp. L. 33, 36 (1990).

Reverse piercing claims fall into one of two categories depending on who is asserting the claim. Crespi, *supra*, at 37. "Outside" reverse piercing claims are claims in which a third party, – a creditor or bankruptcy trustee – is making the alter ego claim, either to hold the corporation liable for the acts of its shareholder or subsidiary, or to bring an action in the name of the corporation against the shareholder or subsidiary. 1 Blumberg, *supra*, § 14.07[A] at 14-22; Crespi, *supra*, at 37; 1 Fletcher, *supra*, § 41.70 at 258. "Inside" piercing claims, by contrast, are typically claims in which the corporate insider, the shareholder or subsidiary, wants to be considered the alter ego of the corporation to assert a corporate claim against a third party. 1 Blumberg, *supra*, § 14.07[A] at 14-21; Crespi, *supra*, at 37; 1 Fletcher, *supra*, § 41.70 at 258.

The piercing claim of Hotel Allerton Mezz is unusual, defying easy classification. At first blush, it appears to involve outside reverse piercing: a former corporate outsider (Hotel Allerton Mezz) is asserting that a former corporate insider (Alt Hotel Mezz) was the alter ego of the insider's then-subsidiary (the debtor). When the current status of the parties is considered,

however – the former outsider is now an insider, having become the parent of the subsidiary in question – the claim appears to involve something like inside reverse piercing: the current insider/parent is asserting that the former parent, now an outsider, was the alter ego of the subsidiary. The point of the alter ego claim, moreover, is to make the current insider/parent a creditor of its own subsidiary in order to bolster the joint effort of parent and subsidiary to subordinate a third party's claim. That sounds distinctly like an inside reverse piercing claim.

Whether Delaware would permit the version of inside reverse piercing advanced here – or indeed reverse piercing of any kind – is highly problematic. Courts elsewhere are deeply split on the theory. A "significant minority" of courts reject outside reverse piercing, 1 Blumberg, *supra*, § 14.07[C] at 14-29, and courts "are overwhelmingly hostile" to inside reverse piercing, *id.* § 14.07[B] at 14-22. These courts reason that insiders who benefit from incorporation should not be able to deny corporate existence later on when the corporate form "works to their detriment or disadvantage." 1 Fletcher, *supra*, § 41.20 at 158; *see, e.g., Liberty Prop. Trust v. Republic Props. Corp.*, 577 F.3d 335, 340 (D.C. Cir. 2009); *Spartan Tube & Steel, Inc. v. Himmelspach (In re RCS Engineered Prods. Co.)*, 102 F.3d 223, 226 (6th Cir. 1996) (concluding that Michigan would not permit reverse piercing in part because the corporate veil is never pierced "for the benefit of the corporation or its stockholders"); *McCarthy v. Azure*, 22 F.3d 351, 363 (1st Cir. 1994); *In re Rehab. of Centaur Ins. Co.*, 158 Ill. 2d 166, 173-74, 632 N.E.2d 1015, 1018 (1994) (Illinois law); *JPMorgan Chase Bank, N.A. v. Malarkey*, 65 A.D.3d 718, 721, 884 N.Y.S.2d 787, 791 (2009) (New York law).

Delaware itself has never recognized any form of reverse piercing. Only four decisions, none of them published, even mention the theory. Of these, two note without comment that a party is attempting to employ reverse piercing. *See Abbey v. Skokos*, No. Civ.A. 2207-N, 2006 WL 2987006, at *1 (Del Ch. Oct. 10, 2006); *IM2 Merchandising & Mfg., Inc. v. Tirex Corp.*,

No. CIV.A.18077, 2000 WL 1664168, at *4 n.11 (Del. Ch. Nov. 2, 2000).  One specifically

declines to say whether Delaware would recognize reverse piercing.  *See MicroStrategy Inc. v.*

*Acacia Research Corp.*, No. 5735-VCP, 2010 WL 5550455, at *12 n.90 (Del. Ch. Dec. 30,

2010).  And the fourth observes that the plaintiff "seems to be trying to pierce its own corporate

veil, which would be unusual to say the least."  *See Case Fin., Inc. v. Alden*, No. 1184-VCP,

2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009).

The piercing claim here requires this court to predict how the Delaware Supreme Court

Not only has Delaware never accepted reverse piercing, but the general tenor of

Delaware corporate law suggests its acceptance would be doubtful.  Delaware has an

exceptionally strong policy of respecting the corporate form.  *Alliance Data Sys. Corp. v.*

*Blackstone Capital Partners V L.P.*, 963 A.2d 746, 769 (Del Ch.), *aff'd without op.*, 976 A.2d

170 (Del. 2009); *see also Teleglobe USA Inc. v. BCE Inc. (In re Teleglobe Commc'ns Corp.)*,

493 F.3d 345, 371 (3d Cir. 2007) (calling this "a bedrock principle of corporate law in

Delaware"); *Case Fin.*, 2009 WL 2581873, at *4 (declaring that "Delaware courts take the

corporate form and corporate formalities very seriously").  "The courts of Delaware" therefore

"do not easily pierce the corporate veil," even when the piercing claim is a conventional one.  *In*

*re Phillips Petroleum Sec. Litig.*, 738 F. Supp. 825, 838 (D. Del. 1990); *see also Wallace*, 752

A.2d at 1183 (noting that convincing a Delaware court to pierce the corporate veil is "a difficult

task" (internal quotation omitted)).  Reverse piercing, a step beyond the conventional, would cut

against the grain of what has rightly been called "[t]he conservative nature of Delaware veil-

piercing law."  Presser, *supra*, § 2:8 at 211 n.1.

The piercing claim here requires this court to predict how the Delaware Supreme Court

would rule, faced not only with a claim for reverse piercing but for inside reverse piercing.  *See*

*Treat v. Tom Kelley Buick Pontiac GMC, Inc.*, 646 F.3d 487, 490 (7th Cir. 2011); *Lewis v.*

*Methodist Hosp., Inc.*, 326 F.3d 851, 853 (7th Cir. 2003); *Home Valu, Inc. v. Pep Boys – Manny,*

*Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000).  When prediction is difficult or

impossible, however, a federal court should hesitate before venturing beyond the frontiers of

established state law, *J.S. Sweet Co. v. Sika Chem. Corp.*, 400 F.3d 1028, 1034 (7th Cir. 2005);

*King v. Damiron Corp.*, 113 F.3d 93, 97 (7th Cir. 1997), and in the absence of guidance should

generally adopt an interpretation that restricts liability rather than expands it, *Home Valu*, 213

F.3d at 965; *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994).[13]

     With no guidance from any Delaware court, with Delaware taking a generally

conservative approach to corporate veil piercing, and with other states "overwhelmingly hostile"

to inside reverse piercing, 1 Blumberg, *supra*, § 14.07[B] at 14-22, it would be inappropriate for

this court, an Illinois bankruptcy court, to find that Delaware would recognize inside reverse

piercing, moving Delaware law in a direction that Delaware's own courts have not yet gone.  *See*

*King*, 113 F.3d at 97 (affirming decision not to recognize a new doctrine under Connecticut law

when Connecticut had not "touched on the issue" and cases elsewhere were split); *see, e.g.,*

*Floyd v. I.R.S.*, 151 F.3d 1295, 1300 (10th Cir. 1998) (refusing to recognize reverse piercing

without guidance from Kansas courts); *RCS*, 102 F.3d at 225 (refusing to recognize reverse

piercing when no Michigan court had addressed the issue and other courts had "reached varying

results"); *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1577 (10th Cir. 1990)

(refusing to recognize reverse piercing without guidance from Utah courts); *Estate of Daily v.*

*Title Guar. Escrow Serv., Inc.*, 178 B.R. 837, 844 (D. Haw. 1995) (refusing to recognize reverse

piercing without guidance from Hawaii courts).  State courts, not federal courts, are the place for

---

     [13]     The decisions cited here expressing reluctance to expand state law arise under
federal diversity jurisdiction.  *See, e.g., King*, 113 F.3d at 97.  But bankruptcy courts have the
same predictive task where state law is concerned, *see, e.g., Drown v. Perfect (In re Giaimo)*,
440 B.R. 761, 769 (B.A.P. 6th Cir. 2010), and federal courts in bankruptcy cases should be no
less reluctant to expand state law, *see Stanziale v. Pepper Hamilton LLP (In re Student Fin.
Corp.)*, 335 B.R. 539, 550 (D. Del. 2005).

innovations in state law.  *Great Cent. Ins. Co. v. Insurance Servs. Office, Inc.*, 74 F.3d 778, 786

(7th Cir. 1996).[14]

Because this court cannot conclude that Delaware would permit a reverse corporate veil-

piercing claim of the kind the plaintiffs have alleged, Hotel Allerton Mezz must be dismissed as

a plaintiff on Count V.[15]

### b.  The Equitable Subordination Claim

That leaves ALT Hotel's portion of the equitable subordination claim in Count V.  That

portion of the claim, too, must be dismissed.  Count V fails to allege the requisite harm to

creditors that would justify subordinating DiamondRock's claim.

---

[14]        The plaintiffs cite *ASARCO LLC v. Americas Mining Corp.*, 382 B.R. 49 (S.D.
Tex. 2007), as holding that Delaware would recognize reverse piercing.  *ASARCO* does hold
that, *see id.* at 68, and so do several other non-Delaware decisions, *see, e.g., In re Alper Holdings
USA, Inc.*, 398 B.R. 736, 759 (S.D.N.Y. 2008); *Pereira v. Cogan*, No. 00 CIV. 619(RWS), 2001
WL 243537, at *19 (S.D.N.Y. Mar. 8, 2001); *Murray v. Miner*, 876 F. Supp. 512, 515-17
(S.D.N.Y. 1995); *Duke Energy Trading & Mktng., L.L.C. v. Enron Corp. (In re Enron Corp.)*,
Nos. 01 B 16034(AJG), 02-3609 A, 2003 WL 1889040, at *3 (Bankr. S.D.N.Y. Apr. 17, 2003).
These decisions are thinly reasoned, several relying on *Murray*, the earliest, without discussion.
*See, e.g., Pereira*, 2001 WL 243537, at *19; *Enron*, 2003 WL 1889040, at *3.  Others conclude
that Delaware would recognize reverse piercing simply because Delaware has never said it
would not.  *See, e.g., ASARCO*, 382 B.R. at 68.  None of the decisions mentions Delaware's
antipathy toward corporate veil piercing.  None of the decisions involves a claim remotely like
the piercing claim here.  And, of course, none of the decisions is binding on this court.

[15]        Assuming Delaware did permit a piercing claim like the one here, and assuming
further that Delaware's usual standards for veil piercing applied to such a claim, Count V would
still have to be dismissed.  To state a claim, the plaintiffs would have had to allege that the
corporate structure was a sham, existed for no purpose other than as a vehicle for fraud or similar
injustice, and was used to cause the fraud or injustice in question.  *Brown v. General Elec.
Capital Corp. (In re Foxmeyer Corp.)*, 290 B.R. 229, 236 (Bankr. D. Del. 2003); *Wallace*, 752
A.2d at 1184.  Count V alleges nothing of the kind.  The injuries of which the plaintiffs complain
resulted from the alleged actions of DiamondRock and its predecessor, Wells Fargo, in
connection with the mortgage loan agreement and the ICA.  A third party inflicted the injuries, in
other words; they were not inflicted through the corporate structure of ALT Hotel or Allerton
Hotel Mezz.  The plaintiffs want to pierce the corporate veils of those entities merely as a way of
addressing the injuries (through equitable subordination of the third party's claims), not because
the corporate structure caused the injuries.

Section 510(c) of the Code permits a court to alter the priority in which claims are paid

by subordinating "for purposes of distribution all or part of an allowed claim to all or part of

another allowed claim." 11 U.S.C. § 510(c). Subordination is to be done "under principles of

equitable subordination." *Id.* Before equitable subordination can occur, three requirements must

be met: (1) the claimant must have engaged in "some type of inequitable conduct"; (2) the

misconduct must have "resulted in injury to the creditors" or "conferred an unfair advantage on

the claimant"; and (3) subordination must not be inconsistent with the Bankruptcy Code. *In re

Kreisler*, 546 F.3d 863, 688 (7th Cir. 2008) (quoting *United States v. Noland*, 517 U.S. 535, 538-

39 (1996) (internal quotation omitted)); *In re Lifschultz Fast Freight*, 132 F.3d 339, 344 (7th Cir.

1997); *American Consol. Transp. Cos. v. RBS Citizens N.A. (In re American Consol. Transp.

Cos.)*, 433 B.R. 242, 253 (Bankr. N.D. Ill. 2010).

The second requirement – injury to creditors – is critical. "[M]isconduct alone doesn't

justify subordination . . . . Only misconduct that harms other creditors will suffice . . . ."

*Kreisler*, 546 F.3d at 866. Equitable subordination is "remedial, not punitive, and is meant to

minimize the effect that the misconduct has on other creditors." *Id.* at 866; *see also In re SI

Restructuring, Inc.*, 532 F.3d 355, 360-61 (5th Cir. 2008). A claim will therefore be

subordinated "only to the extent necessary to undo the effect of the misconduct." *Kreisler*, 546

F.3d at 866. And when the misconduct, however serious, results in no harm to creditors, the

offending party's claim will not be subordinated. *See, e.g., id.* at 866-67; *Wolff v. Waverly View

Inves. (In re RGHGAB at Frederick, LLC)*, Nos. 11-10627PM, 11-0346PM, 2012 WL 1424684,

at *3-4 (Bankr. D. Md. Apr. 24, 2012); *Liberty Mut. Ins. Co. v. Leroy Holding Co. (In re Fort

Ann Express, Inc.)*, 226 B.R. 746, 756-57 (Bankr. N.D.N.Y. 1998).

The harm sufficient for equitable subordination "is difficult to define" and "depends on

the particular facts of the case." *In re Beverages Int'l, Ltd.*, 50 B.R. 273, 283 (Bankr. D. Mass.

1985).  Generally, though, it will "consist of the loss of a right that impacts on the results of the bankruptcy distribution."  *Id.*; *see also 8699 Biscayne, LLC v. Indigo Real Estate, LLC (In re 8699 Biscayne, LLC),* Nos. 08-22814-BKCAJC, 08-01749-AJC, 2010 WL 1375419, at *3 (Bankr. S.D. Fla. Apr. 2, 2010); *Shearer v. Tepsic (In re Emergency Monitoring Techs.)*, 366 B.R. 476, 508 (Bankr. W.D. Pa. 2007); *Aquino v. Black (In re AtlanticRancher, Inc.)*, 279 B.R. 411, 441 (Bankr. D. Mass. 2002).  The harm may be to all creditors, a particular class, a few creditors, or just one.  *Beverages*, 50 B.R. at 283; *8699 Biscayne*, 2010 WL 1375419, at *3.

As DiamondRock correctly argues, the debtor has not pled facts in Count V raising a plausible inference of harm to creditors.  Count V alleges (in a section headed "Injury to Creditors") three forms of harm.  First, DiamondRock's collection of default interest was "in derogation of the rights" of unsecured creditors and put them "at unnecessary risk for timely payment" of their claims.  (Third Am. Compl. ¶¶ 47- 48).  Second, DiamondRock acquired the mortgage loan "without disclosing at that time" that the acquisition was at a discount.  (*Id.* ¶ 49).  And third, DiamondRock brought an "improper and unlawful mortgage foreclosure [action]" that would have left unsecured creditors "to recover nothing . . . in the event of foreclosure."  (*Id.* ¶ 50).[16]

These allegations do not suggest that any creditor has been harmed.  Count V alleges only that the collection of default interest put payments to creditors "at unnecessary risk," not that any creditors went unpaid.  Similarly, Count V alleges only that unsecured creditors would have recovered nothing "in the event of foreclosure," not that they have in fact recovered nothing – and the bankruptcy stayed the foreclosure action.  Equitable subordination requires "actual

---

[16]     Count V goes on to allege that DiamondRock injured Allerton Hotel Mezz in various ways.  (Third Am. Compl. ¶¶ 51(a)-(d)).  But Allerton Hotel Mezz could only be a creditor whose injury would be relevant if the plaintiffs could succeed on their inside reverse piercing claim.  As discussed above, they cannot.

injury," *SI Restructuring*, 532 F.3d at 361 (internal quotation omitted), not merely the risk of it.

The debtor argues that the foreclosure action forced the bankruptcy, but the filing of a

bankruptcy case, without more, is an insufficient injury to sustain an equitable subordination

claim. *80 Nassau Assocs. v. Crossland Fed. Sav. Bank (In re 80 Nassau Assocs.)*, 169 B.R. 832,

843 (Bankr. S.D.N.Y. 1994).  As for DiamondRock's acquisition of the mortgage loan at a

discount, the replacement of one creditor with another on the same debt has no effect on other

creditors, even when the debt is acquired at a discount.  *Kreisler*, 546 F.3d at 867.

Because Count V fails to allege any harm to creditors, it fails to state a claim for

equitable subordination.  Count V will be dismissed with leave to amend to address the

deficiency.

## B.  The *Hotel Allerton Mezz* Jurisdictional Question

Finally, the *Hotel Allerton Mezz* adversary proceeding will be remanded to the Illinois

state court from which it was removed because this court lacks subject matter jurisdiction.  The

claims of Hotel Allerton Mezz do not arise under title 11, do not arise in a case under title 11,

and, most important here, are not "related to" a case under title 11.  *See* 28 U.S.C. § 1334(b).

Subject matter jurisdiction is a threshold question, "the first question in every case," *State*

*of Ill. v. City of Chi.,* 137 F.3d 474, 478 (7th Cir. 1998), because without jurisdiction "the court

cannot proceed at all," *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94 (1998) (internal

quotation omitted).  Federal courts therefore have an obligation to examine their jurisdiction,

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Hukic v. Aurora Loan Servs.*, 588 F.3d 420,

427 (7th Cir. 209), and must raise the question even when, as here, the parties do not, *Smith v.*

*American Gen. Life & Accident Ins. Co.*, 337 F.3d 888, 892 (7th Cir. 2003).  "[N]ot only may the

federal courts police subject matter jurisdiction *sua sponte*, they must." *Hay v. Indiana State Bd.*

*of Tax Comm'rs,* 312 F.3d 876, 879 (7th Cir. 2002).

Bankruptcy jurisdiction is limited. *In re A.G. Fin. Serv. Ctr., Inc.*, 395 F.3d 410, 412 (7th

Cir. 2005); *Wisconsin Dep't of Indus., Labor & Human Relations v. Marine Bank Monroe (In re*

*Kubly)*, 818 F.2d 643, 645 (7th Cir. 1987).  It exists only over claims that either arise under title

11 or arise in or are "related to" a case under title 11.  28 U.S.C. § 1334(b).  Hotel Allerton

Mezz's do not arise under title 11 because they are state law claims, not claims "created or

determined by a statutory provision of title 11."  *Nelson v. Welch (In re Repository Techs., Inc.)*,

601 F.3d 710, 719 (7th Cir. 2010) (internal quotations omitted); *Wood v. Wood (In re Wood)*,

825 F.2d 90, 96 (5th Cir. 1987).  The claims also do not arise in a case under title 11, again

because they are state law claims:  they do not concern "administrative matters that arise *only* in

bankruptcy cases."  *Nelson*, 601 F.3d at 719 (internal quotations omitted) (emphasis in original).

The real question, then, is whether the claims are at least "related to" the bankruptcy case.

They are not.  The Seventh Circuit interprets "related to" jurisdiction more narrowly than

other circuits.  It does so in part "to prevent the expansion of federal jurisdiction over disputes

that are best resolved by the state courts."  *In re FedPak Sys., Inc.*, 80 F.3d 207, 214 (7th Cir.

1996); *see also Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989).

Bankruptcy jurisdiction, the court has said, "extends no farther than its purpose," which is "to

provide a single forum for dealing with all claims to the bankrupt's assets."  *Elscint, Inc. v. First*

*Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987).  Accordingly, a dispute is

"related to" a bankruptcy case only if it "affects the amount of property for distribution [i.e., the

debtor's estate] or the allocation of property among creditors."  *FedPak*, 80 F.3d at 213-14

(alteration in original) (internal quotation omitted); *see also In re Memorial Estates, Inc.*, 950

F.2d 1364, 1368 (7th Cir. 1991); *Xonics*, 813 F.2d at 131; *SG & Co. N.E., LLC v. Good*, 461

B.R. 532, 537-38 (Bankr. N.D. Ill. 2011).

The outcome on the Hotel Allerton Mezz's amended adversary complaint will not affect the amount of estate property to be distributed to creditors or the allocation of that property among creditors. The parties are all either creditors in the bankruptcy case or other non-debtor parties. The debtor is not a party. The claims, moreover, are all damage claims. The amended complaint alleges that the defendants committed breaches of contract and business torts as a result of which Hotel Allerton Mezz was injured. There are only two possible outcomes on these claims: Hotel Allerton Mezz will either win or lose. If Hotel Allerton Mezz wins, the recovery will inure to the benefit of Hotel Allerton Mezz alone. No money will be paid to the estate. If Hotel Allerton Mezz loses, the defendants will benefit by not having to pay anything. But again, no money will be paid to or by the estate. And whether Hotel Allerton Mezz wins or loses, the allocation of estate property among creditors will remain the same.

Because the outcome can have no effect on the estate or on competing claims to estate property, courts in this circuit have repeatedly found no jurisdiction over one non-debtor's action for damages against another non-debtor. *See, e.g., Wayne Film Sys. Corp. v. Film Recovery Sys. Corp.* 64 B.R. 45, 52-53 (N.D. Ill. 1986); *Mazzolin v. Lehman Bros. Real Estate Fund III, L.P.*, No. 11 C 953, 2011 WL 4435649, at *4 (N.D. Ill. Sept. 23, 2011); *Double D Plumbing Corp. v. Piecha (In re Piecha)*, Nos. 10 B 16611, 10 A 1549, 2010 WL 5452121, at *2 (Bankr. N.D. Ill. Dec. 28, 2010); *Fort Wayne Telsat, Inc. v. Simon*, 403 B.R. 590, 595-96 (Bankr. N.D. Ind. 2009); *Baker Dev. Co v. Mulder (In re Mulder)*, 307 B.R. 637, 645 (Bankr. N.D. Ill. 2004); *In re O'Malley*, 252 B.R. 451, 458-59 (Bankr. N.D. Ill. 1999). This is so even when the parties are creditors of the debtor, *Xonics*, 813 F.2d at 131, and the dispute overlaps with the debtor's affairs, *Home Ins. Co.*, 889 F.2d at 749.

Hotel Allerton Mezz does not contend there is "arising under" or "arising in" jurisdiction over its adversary proceeding but does assert that the adversary proceeding is "related to" the

debtor's case.  Hotel Allerton Mezz argues that it is entitled to indemnification from the debtor

under the mezzanine loan agreement for any expenses relating to the debtor's breach of the

agreement and any litigation relating to the debtor.

There are two problems with this argument.  First, the debtor is not a party to the

mezzanine loan agreement.  The agreement is between Hotel Allerton Mezz as lender and Alt

Hotel Mezz as borrower.  So Hotel Allerton Mezz could have indemnification rights against the

debtor, rights that might have an effect on the bankruptcy case, only if Alt Hotel Mezz and the

debtor were deemed to be alter egos – in other words, if the debtor and Hotel Allerton Mezz

were to succeed on their piercing claim in Count V of the complaint in the *ALT Hotel* adversary

proceeding.  But Hotel Allerton Mezz and the debtor will not succeed on the piercing claim in

Count V.  As discussed above, Hotel Allerton Mezz will be dismissed as a plaintiff on that count,

and along with Hotel Allerton Mezz as a party plaintiff will go the piercing claim itself.

Second, even if Hotel Allerton Mezz were a creditor in the case, "related to" jurisdiction

ordinarily cannot be premised on indemnification rights against the debtor, rights the impact of

which is potential rather than actual.  *Salem Mills, Inc. v. Wisconsin Tool & Stamping Co. (In re

Salem Mills, Inc.)*, 148 B.R. 505, 509 (Bankr. N.D. Ill. 1992); *see also Kalamazoo Realty

Venture L.P. v. Blockbuster Entm't Corp.*, 249 B.R. 879, 885 (N.D. Ill. 2000).  For jurisdiction,

"there must be something to evidence the impact, like a proof of claim."  *Salem*, 148 B.R. at 509;

*see also River Oaks L.P. v. Things Remembered, Inc.*, No. 92 C 7877, 1993 WL 147409, at *3

(Bankr. N.D. Ill. May 3, 1993).  But Hotel Allerton Mezz has not filed a proof of claim for

indemnification in the debtor's case.  Its claim is for "money loaned," nothing more.  (*See* Claim

No. 28-1).  That is not enough.  *See River Oaks*, 1993 WL 1474009, at *3 (finding no

jurisdiction based on indemnification where a creditor's proof of claim was not a claim for

indemnification).

Hotel Allerton Mezz next contends that there is "related to" jurisdiction because if Hotel Allerton Mezz prevails on its adversary complaint, the mortgage loan agreement will entitle DiamondRock to indemnification from the debtor.

This argument suffers from the same deficiency as the last. DiamondRock has not filed a proof of claim for indemnification. Like Hotel Allerton Mezz's proof of claim, DiamondRock's proof of claim is only for "money loaned." (Claim No. 27-1). That claim is not enough, *see River Oaks*, 1993 WL 147409, at *3, and without an indemnification claim the mere potential exercise of an indemnification right will not establish jurisdiction, *Salem*, 148 B.R. at 509. There is little potential in any event. The provision of the mortgage loan agreement on which Hotel Allerton Mezz relies requires the debtor to indemnify DiamondRock only for losses resulting from the debtor's breach of the mortgage loan agreement and related documents or from the use of the loan proceeds. (*See* Jt. Mem. at 11-12 (quoting provision)). The amended adversary complaint alleges neither a breach of the mortgage loan agreement nor any injury from the debtor's use of the loan proceeds.[17]

Finally, Hotel Allerton Mezz suggests that the outcome of its adversary proceeding will have an effect on the equitable subordination claim in the *ALT Hotel* adversary proceeding. According to Hotel Allerton Mezz, if it "recovers damages from DiamondRock and/or DRH in the Removed Adversary, the ability of the estate to subordinate DiamondRock's claim will be reduced." (Jt. Mem. at 10).

How that could be true is not at all clear, and Hotel Allerton Mezz's perfunctory

---

[17]     Even if the provision permitted indemnification for a damage award on the claims of Hotel Allerton Mezz, and even if DiamondRock had filed a proof of claim asserting an indemnification right, the court would not have subject matter jurisdiction over the entire adversary proceeding. DiamondRock is a defendant on only four of the six counts in the amended complaint.

explanation in its memorandum is unconvincing (to the extent it is understandable). If Hotel

Allerton Mezz wins on its claims against DiamondRock for breach of the ICA or for interfering

with Hotel Allerton's contractual rights, Hotel Allerton Mezz will receive a damage award –

period. The judgment will have no effect on the equitable subordination claim which, given the

dismissal of Hotel Allerton Mezz as a plaintiff, is strictly the debtor's claim. Hotel Allerton

Mezz's damage award will not even affect Hotel Allerton Mezz's claim in the bankruptcy since

that claim, as just discussed, is for "money loaned" rather than for the injuries DiamondRock

allegedly inflicted. Hotel Allerton Mezz suggests that the complaints in the two adversary

proceedings allege "similar injur[ies] (Jt. Mem. at 10), but "common issues of fact" are not

enough to establish jurisdiction. *In re Pacor, Inc.*, 743 F.2d 984, 994 (3d Cir. 1984) (noting that

"[j]udicial economy itself does not justify federal jurisdiction").[18]

A claim or cause of action can be removed to this court pursuant to 28 U.S.C. § 1452(a),

the bankruptcy removal statute, only if the court "has jurisdiction of such claim or cause of

action under section 1334 of this title." 28 U.S.C. § 1452(a); *see also In re Miles*, 294 B.R. 756,

761-62 (B.A.P. 9th Cir. 2003). In the absence of jurisdiction, a removed matter must be

---

[18]        It might be argued that a judgment against DiamondRock in the *Hotel Allerton Mezz* adversary proceed could have some preclusive effect in the *ALT Hotel* adversary proceeding. The judgment would have no preclusive effect on the debtor because the debtor is not a party to the *Hotel Allerton Mezz* adversary proceeding, *see Pacor*, 743 F.2d at 995, but the debtor might contend that the judgment had some issue preclusive effect against DiamondRock. That possibility, however, is too remote to support "related to" jurisdiction under this circuit's restrictive definition. *See Cytomedix, Inc. v. Perfusion Partners & Assocs., Inc.*, 243 F. Supp. 2d 786, 790 (N.D. Ill. 2003) (noting that "indirect effects" on the bankruptcy case are insufficient); *Rheinstrom v. Action America, Inc.*, 208 B.R. 36, 38 (N.D. Ill. 1997) (finding dispute had too "tenuous" a link to the bankruptcy case because "too many conditions would have to occur" for the estate to be affected); *HA2003 Liquidating Trust v. Carramore Ltd. (In re Ha-Lo Indus., Inc.)*, 330 B.R. 663, 670 (Bankr. N.D. Ill. 2005) (finding insufficient a "highly contingent and tenuous possibility of future connection" with the estate); *Mulder*, 307 B.R. at 646-47. The question is also academic. Hotel Allerton Mezz has not argued the possibility of issue preclusion as a basis for jurisdiction. "Jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986).

remanded.  *TIG Ins. Co. v. Smolker*, 264 B.R. 661, 666 (Bankr. C.D. Cal. 2001).  The burden of

establishing federal jurisdiction rests with the party invoking it.  *Muscarello v. Ogle Cnty. Bd. of

Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).  Hotel Allerton Mezz has not met that burden here.

Because this court lacks jurisdiction over the *Hotel Allerton Mezz* adversary proceeding,

it will be remanded to the state court.

### III.  Conclusion

The motion of defendant DiamondRock Allerton Owner, LLC to dismiss the third

amended complaint of plaintiffs ALT Hotel, LLC and Hotel Allerton Mezz, LLC in the

adversary proceeding styled *ALT Hotel LLC, et al. v. DiamondRock Allerton Owner, LLC*, No.

11 A 1469,  is granted in part and denied in part.  As to Count I, the motion is denied.  As to the

remaining counts, the motion is granted.  Count II is dismissed with prejudice.  Count III is

dismissed with leave to amend.  Count IV is stricken as redundant of Count I.  Hotel Allerton

Mezz, LLC is dismissed as a party plaintiff on Count V, and the remainder of that count is

dismissed with leave to amend.

The adversary proceeding styled *Hotel Allerton Mezz, LLC v. Wells Fargo Bank, N.A., et

al.*, No. 11 A 1651, is remanded to the Circuit Court of Cook County, Illinois on the court's own

motion for lack of subject matter jurisdiction.  The motion to consolidate the two adversary

proceedings is denied as moot.

Separate orders will be entered consistent with this opinion.

Dated:  September 25, 2012

_____
A. Benjamin Goldgar
United States Bankruptcy Judge